# IN THE COURT OF APPEALS OF IOWA

No. 15-1836
Filed August 16, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**WILLIAM CORY SCOTT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Jon C. Fister,

Judge.

        William Cory Scott appeals from the denial of his motion to correct an

illegal sentence.  **WRIT DENIED.**

        Andrea M. Flanagan of Sporer & Flanagan, P.L.L.C., Des Moines, for

appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee.

        Considered by Vaitheswaran, P.J., Tabor, J., and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**GOODHUE, Senior Judge.**

William Cory Scott appeals from the denial of his motion to correct an illegal sentence. We deny the petitition for writ of certiorari.

I.   **Background Facts and Proceedings**

Scott was convicted of first-degree murder on December 13, 1991, under the alternative theories of specific intent and the felony-murder rule based on the felonies of willful injury and terrorism. Scott was mandatorily sentenced to life imprisonment without parole, as provided by Iowa Code sections 707.2 and 902.1 (1991).

The conviction was the result of Scott, a twenty-one-year-old male at the time, shooting and killing Willie Guyton. Scott and his brother-in-law, Raymond Birden, had a history of confrontation with Guyton. In early April 1991, Scott and Guyton had a fight in a convenience store. Guyton slashed Scott around the shoulders with a knife seriously wounding him. Soon thereafter, Scott purchased a rifle, and he bragged to others his new rifle had the power to penetrate a car and kill a party inside. Scott and Birden ran into Guyton a few days later at a bar. Birden told Guyton he had better get his knife. Scott went home and got the rifle he had purchased. Guyton went home, called 911, and was advised not to go back to the bar, but Guyton ignored the advice.

Birden and Scott were outside of the bar in an automobile when Guyton arrived. Birden was driving, and Scott was in the backseat of the car. When the vehicles passed, Birden stopped and got out of his car and Guyton slowed down. Scott saw Guyton pulling out a shiny object, possibly a gun. Scott got out of the car and fired four shots in rapid succession at Guyton's vehicle. Two of the shots

missed the vehicle completely. One went through the driver's door and lodged in the steering column and the fourth went through the middle of Guyton's vehicle and was deflected at a sharp angle, passed through the back of the driver's seat, and fatally wounded Guyton.

Scott was charged with first-degree murder. At trial the jury was instructed, as an alternative, that a verdict of guilt could be returned on the first-degree-murder charge if the jury found that Scott was participating in the offense of either willful injury or terrorism at the time of the shooting. Scott was convicted of first-degree murder.

Scott filed an appeal, and the court of appeals affirmed his conviction on September 2, 1993. Later, Scott filed a postconviction proceeding based on a claim of ineffective assistance of counsel, but his application was denied, and the denial was affirmed by the court of appeals. Scott then filed another postconviction application in 2006, asserting his conviction should be reversed because the instructions used at trial were improper under *State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa 2006). *See Scott v. State* (*Scott I*), No. 06-2084, 2007 WL 3085629, at *3 (Iowa Ct. App. Oct. 24, 2007). He also contended that the failure to make *Heemstra* retroactive violated his constitutional rights. *Id.* The second postconviction action was dismissed, affirmed on appeal by the court of appeals, and affirmed by a per curiam opinion of the supreme court on further review. *Scott v. State* (*Scott II*), No. 06-2084, 2009 WL 1940568, at *1 (Iowa Apr. 17, 2009).

Scott filed a motion to correct an illegal sentence on April 16, 2015, contending terrorism was not a predicate felony that could be used to support a

felony-murder conviction. The motion was summarily dismissed on the date it was filed. Scott filed a motion to reconsider on April 29, 2015, as permitted by Iowa Rule of Civil Procedure 1.904(2). The motion did not refer to facts the court had not addressed or to any theory the court had missed but instead objected to the summary dismissal and the failure to appoint an attorney, and it otherwise rehashed legal arguments presented in the original motion. Apparently because no new facts or concepts had been asserted, the court ignored the motion to reconsider.

On October 8, 2015, Scott filed an amendment to the motion to correct an illegal sentence, asserting once again that terrorism was not a forcible felony and, under the holding in *Heemstra*, it could not be used as a predicate felony to the felony-murder rule. The motion was summarily dismissed. On October 28, 2015, Scott filed a notice of appeal.

## II.   Jurisdiction Issue

The State asserts that we do not have jurisdiction to hear this appeal for two reasons. The State asserts there is no right of appeal from denial of a motion to correct an illegal sentence. Several court of appeals decisions were cited, and our supreme court appears to have adopted that position. *See State v. Graham*, 897 N.W.2d 476, 480-81 (Iowa 2017). Nevertheless, in each of those cases, the court of appeals and our supreme court considered the merits of the case as a petition for writ of certiorari under Iowa Rule of Appellate Procedure 6.107.

The State also asserts that the matter should be dismissed because the notice of appeal was not filed within thirty days after the ruling had been entered.

*See* Iowa R. App. P. 6.107(1)(b). The same time period is required for filing a petition for a writ of certiorari. Iowa R. App. P. 6.107(1)(b). Appellate deadlines are mandatory and jurisdictional. *Bellach v. IMT Ins. Co.*, 573 N.W.2d 903, 904 (Iowa 1998). An untimely filed petition for writ of certiorari deprives the appellate court of jurisdiction. *Thompson v. City of Osage*, 421 N.W.2d 529, 531 (Iowa 1988). There is an exception when a motion is timely filed requesting the enlargement or amendment of the ruling. Iowa R. Civ. P. 1.904(2); Iowa Rs. App. P. 6.107(1)(b), 6.101(1)(b).

Scott filed a timely motion for reconsideration, but no ruling was entered that would retrigger the thirty-day filing requirement. *See* Iowa Rs. App. P. 6.101(1)(b), 6.107(1)(b). However, such a motion will not extend the time period for filing an appeal, or presumably a petition or a writ of certiorari, when it does not address an issue missed or ignored in the court's initial ruling and the motion to reconsider is nothing more than a rehash of legal issues previously raised and decided. *Hedlund v. State*, 875 N.W.2d 720, 725-26 (Iowa 2016). Scott's motion for reconsideration falls squarely within the ambient of a rehash of legal issues previously raised. Even if the State's motion to dismiss on jurisdictional grounds was granted, such a ruling would not be not dispositive as a claim of an illegal sentence can be raised at any time and Scott could simply refile his claim of an illegal sentence. Accordingly, the merits of his claims will be addressed.

### III. Illegal Sentence Claim

### A. Preservation of Error

Because unconstitutional sentences are illegal sentences, the usual error preservation rules are not applicable. *See State v. Oliver*, 812 N.W.2d 636, 639 (Iowa 2012).

### B. Scope of Review

Illegal sentences are reviewed for correction of legal errors, but to the extent a constitutional issue is raised, they are reviewed de novo. *State v. Lyle*, 854 N.W.2d 378, 382 (Iowa 2014).

### C. Felony-Murder Rule

We question the use of a motion to correct an illegal sentence as to an error that relates to the instructions and prior to the sentence itself. A motion to correct an illegal sentence is not meant to re-examine errors occurring during the trial or proceeding prior to the sentence. *State v. Bruegger*, 773 N.W.2d 862, 885-86 (Iowa 2009). Willful injury can no longer be used as the predicate felony in the felony-murder rule but the limitation is prospective only. *See Goosman v. State*, 764 N.W.2d 539, 545 (Iowa 2009). Scott raised the issue previously as to willful injury and he was denied relief because the ruling in *Heemstra* was limited to prospective application. *See Scott II*, 2009 WL 1940568, at *1.

Scott also contends that the inclusion of terrorism as a predicate felony in the felony-murder instruction used in the charge to his jury created an illegal sentence. Similar to willful injury, the limitation is prospective only as to terrorism as a predicate felony under the felony–murder rule. *See Nguyen v. State*, 878 N.W.2d 744, 759 (Iowa 2016).

**D.** Cruel and Unusual Punishment

Scott also raises a claim that his sentence is illegal because it constitutes cruel and unusual punishment prohibited by the Eighth Amendment of the United States Constitution and article 1, section 17 of the Iowa Constitution. The contention is first asserted in Scott's appellate brief. Lacking any record regarding a specific claim creates difficulty for the reviewing court, but we have the right to remand for further record or for additional briefing. *See Lyle,* 854 N.W.2d at 383; *Bruegger*, 773 N.W.2d at 885-86. If there is no record to establish the illegal nature of a sentence, it would seem unusual for the defendant to be granted relief absent a remand or, at a minimum, rebriefing. This is not a case where either a remand or further briefing is required.

The concept of prohibited cruel and unusual punishment has been broken down into two general categories: (1) as applied to the individual and (2) categorical challenges. *See Graham v. Florida*, 560 U.S. 48, 59-60 (2010). Scott has raised the prohibition of cruel and inhuman treatment as contained both in the United States Constitution and the Constitution of the State of Iowa. Scott has not relied on a separate or different interpretation of the Iowa Constitution from the United States Constitution but emphasized that, while we accept the federal standards in Iowa, we apply a more stringent review than would be available under the federal constitution. See *Bruegger*, 773 N.W.2d at 883.

Scott does not make it clear whether he has made an as applied-to-him or categorical challenge to the sentence. "The concept of rationality is central to the Eighth Amendment." *Graham*, 560 U.S. at 59. A categorical challenge requires

a comparison between the severity of the punishment to the gravity of the crime to determine if the applicable sentence leads to an inference of disproportionality. *Oliver,* 812 N.W.2d at 640. If an inference of disproportionality does not exist, the threshold step has not been met. *Id.* Scott has indulged in an interjurisdictional analysis. Such an analysis is a step that is applicable only in the rare case where the threshold comparison of the crime committed with the statutory sentence required leads to an inference of disproportionality. *Id.* at 639. Both terrorism and willful injury were defined by statute as predicate felonies applicable to the felony-murder rule at the time of Scott's trial and conviction. The State has wide latitude and power in defining crimes. *State v. Fuhrmann,* 261 N.W.2d 475, 479 (Iowa 1978).

Given the right and power the legislature has to enact a felony-murder rule, life imprisonment is not so disproportionate to the seriousness of the offense as to shock one's sense of justice. *State v. Rhode,* 503 N.W.2d 27, 41 (Iowa Ct. App. 1993). Few, if any, criminal acts are more deserving of the maximum penalty that can be imposed than causing the death of another fellow human being.[1]

To the extent Scott's claim is based on cruel and unusual punishment as applied to him, the sentence of life without parole that he received must create an inference of gross proportionality to the criminal act or crime he perpetrated. *See Oliver,* 812 N.W.2d at 650. If that test is not met, it is not necessary to proceed

---

[1] We recognize the Iowa Supreme Court may have intended to replace the first category with "a gross proportionality challenge to [the] particular defendant's sentence." *See Oliver,* 812 N.W.2d at 840. Whether the language was intended to name the challenge or to set out the process is not entirely clear. Regardless, the result is the same.

further.  *Id.*  Again, the task is to balance the gravity of the crime the defendant committed with the severity of the sentence he received.  *Id.*  An inference of gross proportionality is, in a sense, an application of the community standards.  *Id.*  Substantial deference is granted to the legislature as the most reliable source of the community in determining whether an inference of gross disproportionality exists, and therefore, whether a sentence is cruel and unusual.  *Id.*  It is rare that a sentence is so grossly disproportionate to the crime as to meet the threshold inquiry.  *Id.*

Death occurred as a result of the underlying crime.  Scott obtained a rifle only days before and bragged that he had a rifle that could penetrate a vehicle and kill someone inside.  He fired not once but four times and hit the vehicle the victim was riding in twice.  He knew the power of the rifle he was using and intentionally fired it into a vehicle that he knew was occupied by his antagonist.  Scott fails the threshold test of gross disproportionality as to both the categorical challenge and the as applied to him challenge, and therefore, no further analysis is required.

**WRIT DENIED.**